NANCY L. REED,

1:16-cv-9099-NLH

                  Plaintiff,

**OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,
                  Defendant.

**APPEARANCES:**

RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
102 BROWNING LANE, BLDG C-1
CHERRY HILL, NJ 08003
    On behalf of Plaintiff

KATIE M. GAUGHAN
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN STREET
PHILADELPHIA, PA 19123
    On behalf of Defendant

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial

evidence" that Plaintiff was not disabled at any time since
her alleged onset date of disability, which Plaintiff
initially claimed was June 28, 2004, but subsequently amended
to April 2, 2008.  For the reasons stated below, this Court
will affirm that decision.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On August 17, 2011, Plaintiff, Nancy L. Reed,
protectively filed an application for DIB, initially alleging
that she became disabled on June 28, 2004, but she later
amended her alleged onset date to April 2, 2008.  Plaintiff
claims that she is no longer able to work in her past
employment as a legal secretary because she suffers from
various impairments, including degenerative disc disease of
the lumbosacral and cervical spine, sleep apnea, peripheral
neuropathy, and urinary incontinence.

Plaintiff's initial claim was denied on December 12,
2011.  After her request for reconsideration was denied on
April 11, 2012, Plaintiff requested a hearing before an ALJ,
which was held on July 2, 2013.  At the hearing, Plaintiff
amended her alleged onset date of disability to April 2, 2008.
On August 14, 2013, the ALJ issued an unfavorable decision.
Pursuant to Plaintiff's Request for Review of Hearing Decision

to the Appeals Council on March 26, 2015, the Appeals Council remanded the case to the ALJ for further review of the Plaintiff's residual functional capacity ("RFC"). A second hearing was held on July 9, 2015. On August 31, 2015, the ALJ issued a second unfavorable decision. Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on October 5, 2016, making the ALJ's August 31, 2015 decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting

Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).

It means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Id. The inquiry

is not whether the reviewing court would have made the same

determination, but whether the Commissioner's conclusion was

reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.

1988).

A reviewing court has a duty to review the evidence in

its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

1984). "[A] court must 'take into account whatever in the

record fairly detracts from its weight.'" Schonewolf v.

Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting

Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301,

303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB,

340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record

his reasons for rejecting or discrediting competent evidence."

Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing

Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third

Circuit has held that an "ALJ must review all pertinent

medical evidence and explain his conciliations and

rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d

4

112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider

and weigh all of the non-medical evidence before him.  Id.

(citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir.

1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the

Commissioner's reasoning is indeed essential to a meaningful

court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained
> the weight he has given to obviously
> probative exhibits, to say that his
> decision is supported by substantial
> evidence approaches an abdication of the
> court's duty to scrutinize the record as a
> whole to determine whether the conclusions
> reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart,

94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial

review, a district court is not "empowered to weigh the

evidence or substitute its conclusions for those of the fact-

finder." Williams, 970 F.2d at 1182.  However, apart from the

substantial evidence inquiry, a reviewing court is entitled to

satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. <u>Sykes</u>, 228 F.3d at 262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

### B.   Standard for Disability Insurance Benefits

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. <u>See</u> 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis

added).

The Commissioner has promulgated regulations[1] for determining disability that require application of a five-step sequential analysis. _See_ 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 _and_ has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is

---

[1] The regulations were amended for various provisions effective March 27, 2017. _See_ 82 F.R. 5844. Because the ALJ issued his decision prior to that effective date, the Court must employ the standards in effect at the time of his decision.

incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

## C. Analysis

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ found that Plaintiff's impairments of degenerative disc disease of the lumbosacral spine, status-post a laminectomy, and degenerative disc disease of the cervical spine, status-post a cervical fusion, were severe. At step three, the ALJ determined that

Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments. The ALJ then determined that Plaintiff's residual functional capacity ("RFC") precluded her from performing her past work as a legal secretary, but her RFC rendered her capable of performing sedentary work in jobs such information clerk, appointment clerk, and surveillance system monitor (steps four and five).

Plaintiff presents four arguments on appeal:

1. Whether the ALJ erred at step five in finding that Plaintiff acquired "transferrable skills" to perform certain jobs by relying on the Vocational Expert's testimony that work aptitudes or "abilities" were actually "skills";

2. Whether the ALJ erred in failing to address the VE's testimony that a frequent limitation in reaching and handling would have a significant impact on the transferability of the skills identified;

3. Whether the ALJ failed to provide a credibility determination pursuant to SSR 96-7p; and

4. Whether the ALJ erred in failing to address significant evidence in the record.

The Court will address Plaintiff's arguments in two parts.

First, the Court will consider Plaintiff's arguments regarding the VE's testimony and the ALJ's transferrable skills analysis at step five of the sequential evaluation process. Second, the Court will consider Plaintiff's arguments about the ALJ's credibility determination and consideration of the record evidence as a whole.

### a. Whether the ALJ erred at step five

As set forth above, at the fourth step in the ALJ's analysis of a DIB claim, the burden is on the claimant to establish that she is unable to perform any of her past relevant work. The primary part of this analysis requires the ALJ to determine the claimant's residual functional capacity ("RFC"). The RFC reflects "what [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a).[2]

In making a RFC determination, the ALJ is required to do the following:

> In determining whether you are disabled, we consider all
> your symptoms, including pain, and the extent to which
> your symptoms can reasonably be accepted as consistent
> with the objective medical evidence and other evidence.
> By objective medical evidence, we mean medical signs and
> laboratory findings . . . . By other evidence, we mean .
> . . statements or reports from you, your treating or

---

[2] The RFC finding is a determination expressly reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c).

nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. . . .

20 C.F.R. § 404.1529.

Under this framework, the ALJ in this case determined that through the date last insured[3] – June 30, 2009 - Plaintiff had the RFC to perform sedentary work, in addition to performing frequent fingering, grasping, holding, reaching and handling with her hands.[4] Based on this RFC, the ALJ determined that even though the Appeals Council suggested that Plaintiff was able to perform her past relevant work as a legal secretary, and his RFC assessment could also support that finding, the ALJ nonetheless provided Plaintiff with "the benefit of the doubt" and proceeded to step five under the assumption she was unable

---

[3] The date last insured is the last day of the quarter a claimant meets insured status for disability. A claimant must be deemed disabled by that date in order to receive DIB benefits. 20 C.F.R. § 404.131.

[4] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

to perform her past relevant work.  (R. at 29.)

Having found that Plaintiff met her burden at step four, the ALJ continued to step five, where the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant is capable of performing.  To make that showing, the ALJ considered testimony from a Vocational Expert, and the transferability of Plaintiff's skills as a legal secretary to other jobs was discussed.

Under 20 C.F.R. § 404.1568, in order to evaluate a claimant's skills and to help determine the existence of work a claimant is able to perform, occupations are classified as unskilled,[5] semi-skilled,[6] and skilled.  With regard to transferrable skills, the regulations explain:

> (d) *Skills that can be used in other work (transferability)*—
>
>> (1) *What we mean by transferable skills.* We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work.  This depends largely on the

[5] Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . .  A person does not gain work skills by doing unskilled jobs.  20 C.F.R. § 404.1568.

[6] Semi-skilled work is work which needs some skills but does not require doing the more complex work duties.  20 C.F.R. § 404.1568.

similarity of occupationally significant work
activities among different jobs.

(2) *How we determine skills that can be transferred
to other jobs.* Transferability is most probable and
meaningful among jobs in which—

> (i) The same or a lesser degree of skill is
> required;
> (ii) The same or similar tools and machines are
> used; and
> (iii) The same or similar raw materials,
> products, processes, or services are involved.

(3) *Degrees of transferability.* There are degrees of
transferability of skills ranging from very close
similarities to remote and incidental similarities
among jobs. A complete similarity of all three
factors is not necessary for transferability.
However, when skills are so specialized or have been
acquired in such an isolated vocational setting (like
many jobs in mining, agriculture, or fishing) that
they are not readily usable in other industries,
jobs, and work settings, we consider that they are
not transferable.

20 C.F.R. § 404.1568.

Under this framework, the VE testified that Plaintiff's

past relevant work as a legal secretary entailed the skills of

documentation, filing, operation of computer and other office

equipment, scheduling and typing skills, and these skill were

transferrable to sedentary jobs, such as an information clerk

and appointment clerk. In tandem with this testimony, the VE

further testified that based on a hypothetical individual with

Plaintiff's skills and RFC as found by the ALJ, as well as her

age and education, that individual would be able to work as:
(1) an information clerk, which is semi-skilled and sedentary,
and 500,000 jobs exists in the national economy; (2) an
appointment clerk, which is semi-skilled and sedentary, and
100,000 jobs exists in the national economy; and (3) a
surveillance system monitor, which is unskilled, sedentary, and
90,000 jobs exists in the national economy.

The ALJ determined that even though Plaintiff's
limitations did not allow her to perform the full range of
sedentary work, the range of jobs Plaintiff could perform was
not significantly diminished by her non-exertional limitations.
These jobs included the three jobs set forth by the VE, which
the ALJ found to satisfy the Commissioner's burden of proving
that other jobs existed in significant numbers in the national
economy that Plaintiff was capable of performing.

Plaintiff finds fault with this determination in two ways.
Plaintiff argues that the VE, and as a result the ALJ,
inappropriately considered Plaintiff's "aptitudes" or "traits"
present in all jobs – even unskilled jobs - rather than her
"skills" which are specialized in the transferability analysis.
She also argues that the ALJ did not consider the testimony
elicited from Plaintiff's counsel's questioning of the VE about

Plaintiff's skills relative to a claimant who was limited in frequent reaching and handling.

The Court does not find that the ALJ erred in either way. The VE testified, and the ALJ accepted, that Plaintiff gained the skills of documentation, filing, operation of computer and other office equipment, scheduling and typing skills from her prior work as a legal secretary. The Court is not persuaded that these are aptitudes or traits rather than skills.

Examples of traits and aptitudes are "alertness," "coordination and dexterity," "special perception," and "motor coordination." Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984) (discussing SSR 82-41). In contrast, skills refer to experience and demonstrated proficiency with work activities in particular tasks or jobs. For example, "a semiskilled general office clerk (administrative clerk), doing light work, ordinarily is equally proficient in, and spends considerable time doing, typing, filing, tabulating and posting data in record books, preparing invoices and statements, operating adding and calculating machines, etc." SSR 82-41. "These clerical skills may be readily transferable to such semiskilled sedentary occupations as typist, clerk-typist and insurance auditing control clerk." Id.

Here, the ALJ found, based on the VE testimony, that
Plaintiff's prior job as a legal secretary provided her with
the skills of documentation, filing, operation of computer and
other office equipment, scheduling and typing.  These
proficiencies are clearly skills garnered from her prior
employment and not simply general aptitudes.  Plaintiff
requires a certain level of motor skills, for example, to type
on a computer and file documents, but as the SSA explained, "It
is the acquired capacity to perform the work activities with
facility (rather than the traits themselves) that gives rise to
potentially transferable skills."  SSR 82-41.  Thus, the ALJ
did not impermissibly perform the transferability analysis as
to Plaintiff's traits instead of skills as she contends.

Even if, however, the ALJ erred in this analysis, the ALJ
also found that Plaintiff was capable of performing the
unskilled, sedentary job of surveillance system monitor.  The
transferability analysis is not relevant to a claimant's
ability to perform an unskilled job.  See Podedworny, 745 F.2d
at 221 (explaining that the regulations do not permit benefits
to be denied based on the transfer of skills to unskilled jobs,
and "it is counterintuitive to suggest that skills can be
transferred to unskilled work").  Thus, the ALJ did not err in

the transferability analysis because it was inapplicable to that unskilled job. Moreover, the finding that Plaintiff retained the RFC to perform one job that exists in significant numbers in the national economy met the ALJ's burden at step five to show that Plaintiff is not disabled. See Nalej v. Berryhill, 2017 WL 6493144, at *11 (D.N.J. 2017) (citing 20 C.F.R. § 416.966(b))(explaining that SSA regulations provide that work exists in the national economy when there is a significant number of jobs in one or more occupations that an individual can perform, and holding that even if the ALJ erred in finding the plaintiff capable of performing two of three jobs, he did not err as to the third job, and that finding as to only one job was sufficient to support his determination that the plaintiff was not disabled).

Next, Plaintiff argues that the ALJ did not properly consider the hypothetical posed by Plaintiff's counsel to the VE about a claimant who has limited ability in using her upper extremities, because as the VE testified, such a limitation would erode the skills necessary for the semi-skilled positions. The Court does not agree. The ALJ explicitly found that Plaintiff retained the RFC to perform sedentary work, in addition to performing frequent fingering, grasping, holding,

reaching and handling with her hands.  This finding meant that
Plaintiff had little to no limitation on the use of her upper
extremities as required at the sedentary level, which finding
matches the skills and abilities required by the sedentary,
semi-skilled jobs suggested by the VE.  There was no need,
therefore, for the ALJ to consider a hypothetical claimant who
was limited in these areas, since Plaintiff was not.  Moreover,
even if the ALJ were required to assess this hypothetical
claimant, the ALJ found that Plaintiff was capable of
performing an unskilled position, and as previously explained,
the transferability analysis is not implicated for that
position.

Consequently, Plaintiff's argument for reversal of the
ALJ's decision regarding his transfer-of-skills analysis is
unavailing.

> **b.   Whether the ALJ properly assessed Plaintiff's
>       credibility and considered all the evidence**

Plaintiff argues that the ALJ barely acknowledged her
testimony, and essentially ignored most of the record
evidence.  The Court recognizes that the ALJ's decision does
not recount in intricate detail either Plaintiff's subjective
complaints or her medical records which span almost 20 years.
The ALJ is not required to do so, however, and what evidence

he specifically referenced is more than sufficient to satisfy this Court that substantial evidence supports his decision.

As to Plaintiff's testimony, the ALJ summarized her complaints that: she cannot sit, stand or walk for long periods or lift or carry significant weights in a work setting; she had numbness and tingling in her fingers; she has fallen when she has tried to walk long distances; pain causes her difficulty in concentration and remembering things; she does not do much but watch television during the day, perform light housework, and do light cooking; and in October 2010 she was able to do some part-time work as a housecleaner. (R. at 27.)

As to Plaintiff's medical records, the ALJ summarized her impairments beginning in 1994 when she was injured in a motor vehicle accident. The ALJ related her surgeries and medical care through the subsequent years, and noted that as of June 3, 2008, Plaintiff reported to her physician that her neck was "okay" but stiff occasionally, and she had intermittent weakness in her arms, but it was much better since her fusion. The ALJ also noted that Plaintiff began treatment for knee pain in October 2010, but the onset of that condition occurred after the date for insured status. (R. at 27-28.)

The ALJ related that on April 3, 2012, Plaintiff's medical file was examined by a state agency medical consultant. That physician determined in an eight-hour work day, Plaintiff could sit for six hours, stand/walk for four hours, and lift/carry ten pounds occasionally, but she could only occasionally climb, balance, stoop, kneel, crouch or crawl. The ALJ noted that these findings were consistent with sedentary work. (R. at 28.)

By July 2013, Plaintiff's medical records showed that she had equal strength of hand grasps in the upper extremities, normal motor strength in all extremities, and intact sensation. (R. at 29.) The ALJ related that even though her medical records showed that she ebbed and flowed in exacerbations and remissions from 2012, the ALJ was tasked to determine Plaintiff's RFC as of June 30, 2009. (R. at 28.) The ALJ concluded that the medical evidence overall failed to corroborate Plaintiff's subjective complaints, and it did not establish that Plaintiff's RFC precluded all levels and types of gainful work activity as of that date. (R. at 29.)

The ALJ could have discussed every single medical record in the file, restated Plaintiff's testimony at the hearings, and recounted all her subjective complaints since 1994, but

that would not have changed the result.  The ALJ is required

to consider all the evidence and give some reason for

discounting the evidence he rejects, <u>Adorno v. Shalala</u>, 40

F.3d 43, 48 (3d Cir. 1994), but the ALJ "need not undertake an

exhaustive discussion of all the evidence" to meet this

burden, <u>Hernandez v. Commissioner of Social Sec.</u>, 89 F. App'x

771, 773–74 (3d Cir. 2004).  Thus, even if the ALJ listed

every one of Plaintiff's medical records and stated verbatim

her testimony and subjective complaints, the central reasons

for the ALJ's decision would be the same as he related in his

decision.

While Plaintiff points to medical records from the early

2000s directly after her surgeries to support her disability

claim, the ALJ reviewed all of the records and Plaintiff's

testimony as a whole, and specifically referenced pre-June

2009 and subsequent records to support his determination that

Plaintiff retained the RFC to perform sedentary work as of

June 30, 2009.  The ALJ has an obligation to provide an

"adequate basis so that the reviewing court can determine

whether the administrative decision is based on substantial

evidence."  <u>Cotter v. Harris</u>, 642 F.2d 700, 706 (3d Cir.

1981).  Although Plaintiff challenges the ALJ because his

decision was not exhaustive, the ALJ's decision in this case met his obligation by what he specifically referenced in the decision and how he articulated his findings to support his conclusion. See, e.g., Gaddis v. Commissioner of Social Sec., 417 F. App'x 106, 108 (3d Cir. 2011) ("While he did not author a particularly lengthy opinion, we are satisfied that the [ALJ] fulfilled the obligations imposed by SSR 82-41 in a manner supported by substantial evidence.").

Consequently, the Court does not find that the ALJ erred in his consideration of Plaintiff's testimony and the medical record as a whole.

### III. CONCLUSION

This Court may not second guess the ALJ's conclusions, and may only determine whether substantial evidence supports the ALJ's determinations. Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal is that a district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ). The Court finds in this case the ALJ's determination that Plaintiff was not totally disabled as of June 30, 2009 is supported by substantial evidence. The decision of the ALJ is

therefore affirmed.

An accompanying Order will be issued.


Date: October 30, 2018                    s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

23